**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TREVA L.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21 C 5199** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i), 423, about four years ago in September 2018. (Administrative Record (R.) 649-52). She claimed that she became disabled as of December 18, 2017, due to stage 3 lymphoma, diabetes, lupus, rheumatoid arthritis, and antiphospholid antibody syndrome. (R. 185, 205). Over the next three years, the plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. Plaintiff filed suit under 42 U.S.C. § 405(g) on October 1, 2021. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on October 7, 2021. [Dkt. #6]. It is the ALJ's decision that is before the court for review. *See* 20 C.F.R. §§404.955; 404.981. Plaintiff asks the court to remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

## I.

## A.

Plaintiff was born on July 23, 1966, and was 51 years old on her alleged onset date. (R. 500). She has at least high school education and two years of college. (R. 679). She has an excellent work record, working steadily from 1983 through 2017 (R. 663-64), most recently as a file clerk and a material handler for a pharmaceutical company. (R. 500, 536). This "composite job" involved a little of everything, from inventory, writing reports on a computer, to retrieving records and boxes. (R. 678). She had to lift up to 70 pounds at times. (R. 678).

The medical record in this case is, as is typical for these cases, large and disorganized. It comes in at about 1700 pages of medical evidence – many of those duplicated – arranged in no particular order. As is also often typical for these cases, very little of it appears pertinent to the plaintiff's claim for benefits. Indeed, the plaintiff cites no more than a handful of pages from the record to support her arguments for a remand of the ALJ's decision: R. 549, 552, 554-55, 569-73, 1349-50, 1561. [Dkt. #16, at 6, 7, 10].

As is it is with every case, however, this case is about the evidence. To make out a claim for disability benefits or to overturn a denial of such a claim, contentions or allegations alone will not do it." Hypothesis is not proof." *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2003). *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability...."); 20 C.F.R. §§ 404.1529(a); 416,929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). The plaintiff "bears the burden to prove she is disabled by producing medical evidence." *Gedatus v. Saul,* 994 F.3d 893, 905 (7th Cir. 2021); *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021)(plaintiff must "identify[ ] ...

objective evidence in the record" that she is disabled); *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). The plaintiff is also responsible for directing the court to evidence that shows her limitations are greater than those found by the ALJ. *Gedatus v. Saul,* 994 F.3d 893, 901 (7th Cir. 2021); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020). Time and again, courts remind counsel that it is their job as advocates to provide citations to the evidence in the record that supports their arguments. Here, however, as already indicated, the plaintiff's brief cites no more than three reports from a 1700-page record covering four or five years of medical records. As such, the court will dispense with what would be a necessarily rambling summary of the record and address the pertinent evidence as chosen by plaintiff's counsel in connection with the arguments plaintiff presents.

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: a panic disorder; a major depressive disorder; a positive ACA and Beta-2 Glycoprotein x2 consistent with APA syndrome; an extra nodal Marginal Zone Lymphoma Stage III; and anemia. (R. 492). The ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, focusing on the listings for hemolytic anemias (7.05), thrombosis and hemostasis (7.08), and lymphoma (13.05). (R. 493-94). The ALJ further found that plaintiff's depression and panic disorders cause moderate limitations in her ability to understand, remember, or apply information; to interact with others; and to concentrate, persist, or maintain pace. (R. 495).

The ALJ then determined that plaintiff could perform medium work except that the plaintiff could:

> frequently climb ramps and stairs, never climb ladders ropes or scaffolds, and can frequently balance, stoop, kneel, crouch, and crawl. She is limited to no foot controls with her right lower extremity. She can occasionally operate a commercial vehicle. She can never work around hazards, such as unprotected heights or moving dangerous mechanical parts. She can occasionally work in conditions of humidity and wetness, in conditions of extreme heat or cold, or where vibrations are present. She is also limited to performing simple, routine and repetitive tasks, but not at a production rate pace, for example, no assembly line work. She is limited to making simple work-related decisions. She is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained. She can respond appropriately to occasional interaction with supervisors, coworkers, and the general public.

(R. 496). The ALJ then briefly summarized plaintiff's allegations, noting that plaitiff testified that she was unable to work due to fear that she will have a stroke again, pain in her hips due to arthritis, and Lupus. The ALJ added that plaintiff testified that she uses heat treatments, takes walks to deal with her pain, could walk for 30 minutes, and lift a gallon of milk. (R. 497). The ALJ then discussed the medical evidence, beginning with plaintiff's lymphoma and chemotherapy treatment, noting that a biopsy in April 2018 was negative for malignancy. (R. 497). The ALJ continued through the record, noting mostly benign comments and exam results regarding her impairments. (R. 498). The ALJ acknowledged that plaintiff reported an increase in hip pain and asked for a cane in the Fall of 2019, but also noted that exam results were normal. (R. 498).

The ALJ then reviewed the medical opinions in the record. She found the report from plaintiff's counselor "unpersuasive as it is inconsistent with the medical record as a whole." The counselor felt plaintiff's symptoms were not stabilized, her ability to function on a daily basis was impaired, and her diagnosis was "debilitating." The ALJ noted that exam results were normal in

4

June and November of 2019, and in August 2020. (R. 499).

The ALJ found the opinion from the consultative psychologist "somewhat persuasive, as it is generally consistent with the medical record as a whole." That doctor stated that plaintiff's functioning was "grossly intact with some notable difficulties with sustained mental effort and concentration and abstract reasoning. Cognitive tasks that require effort and appear difficult for her, while her frustration tolerance appeared low." The ALJ explained that she accommodated these limitations accommodated in her residual functional capacity finding with limitations for simple, routine and repetitive tasks, simple work-related decisions, with few changes in the work setting, where any necessary changes need to occur infrequently, and be adequately and easily explained, with only occasional interaction with supervisors, coworkers, and the general public. (R. 499)

The ALJ found the opinions from the state reviewing physicians "persuasive, as [they] were consistent with the medical record as a whole." Those doctors found that plaintiff could occasionally lift or carry 50 pounds, and frequently lift or carry 25 pounds, stand or walk for six hours in an eight-hour day, sit for six hours in an eight-hour day, frequently crawl, crouch, balance, and climb ramps, stairs, ladders, ropes, or scaffolds, and must avoid concentrated exposure to hazards. The ALJ accepted the opinion, adding that plaintiff could never climbing ladders ropes or scaffolds, and could occasionally work in conditions of humidity and wetness, in conditions of extreme heat or cold, or where vibrations are present. (R. 499).

The ALJ then noted that the state agency reviewing psychologists felt plaintiff retained the mental capacity to understand, remember and concentrate sufficiently in order to carry out one or two-step instructions for a normal work period; she could make work related decisions; she could interact with others sufficiently in a work setting with reduced social demands; she did not have

problems getting along but states anxiety in large crowds. As a result, the psychologists felt plaintiff would do best in a predictable, routine work setting where employment-related social interactions are infrequent, brief, and largely task-specific. The ALJ found the opinion persuasive, because it was consistent with the medical record as a whole. She explained that she accommodated these limitations in her residual functional capacity finding with limitations to simple, routine, and repetitive tasks; simple work-related decisions, with few changes in the work setting, where any necessary changes need to occur infrequently, and be adequately and easily explained; and only occasional interaction with supervisors, coworkers, and the general public. (R. 500).

Finally, the ALJ said that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 500). Next, the ALJ, relying on the testimony of the vocational expert, found that plaintiff could not perform her past work. She could, however, perform other work that existed in significant numbers in the national economy. Examples cited were: janitor (DOT #381.687-018; 1 million jobs in the national economy); hospital cleaner (DOT #323.687-010; 306,000 jobs in the national economy); and packager (DOT #920.587-018; 175,000 jobs in the national economy). (R. 501). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 502).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first

6

instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154; *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). If reasonable minds could differ, the court must defer to the ALJ's weighing of the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). But, in the Seventh Circuit, at least thus far, the ALJ also has an obligation to build what the court has called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." As *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) put it: "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by

a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." [2] *But see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record..."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties, ... No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard: one reader's Mackinac Bridge is another's rickety rope and rotting wood nightmare. But no matter what one's view of the "logical bridge" requirement, no one suggests that the "accurate and logical bridge" must be the equivalent of the Point Neuf. The subjectivity of the requirement makes it difficult for ALJs hoping to write acceptable decisions that stand up to judicial scrutiny when challenged, or when upheld at the district court level and challenged again before the Seventh Circuit.

---

[2] The term "accurate and logical bridge" was first used by Judge Spottswood Robinson in a non-Social Security context in *Thompson v. Clifford*, 408 F.2d 154 (D.C.Cir. 1968), which said "'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." 408 F.2d at 167. Judge Posner, first used the phrase in a Social Security context in *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996) and would be the first to acknowledge that it was not meant as a self-defining test or formula. *Cf., United States v. Edwards*, 581 F.3d 604, 608 (7th Cir. 2009)("We recall Holmes's admonition to think things not words...."); *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 990 (7th Cir. 2004).

More recently, the Seventh Circuit, in a Social Security case explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

But, at the same time, the Seventh Circuit has also called the "logical bridge" requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). Indeed, prior to *Sarchet*, the Seventh Circuit "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence . . . in cases in which considerable evidence is presented to counter the agency's position." *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984). Later, in *Stephens v. Heckler*, 766 F.2d 284 (7th Cir. 1985), the court was more explicit when rejecting a plaintiff's argument that an ALJ failed to discuss his complaints of pain:

> We do not have the fetish about findings that Stephens attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
>
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do. . . . This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Id.*, at 287 (citations omitted). Or, as the court succinctly put it, "[i]f a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Id*. at 287-88. Given the record, and plaintiff's inability to point to evidence that shows he cannot perform the simple work the ALJ found he could perform.

Given the record in this case, the ALJ has done enough here.

### III.

The plaintiff advances two arguments against affirming the ALJ's denial of benefits in this case. First, the plaintiff contends that the ALJ failed to provide for her use of a cane in her residual functional capacity finding. Second, the plaintiff submits that neither the ALJ's residual functional capacity finding nor her hypothetical to the vocational expert account for plaintiff's deficiencies in concentration, persistence, and pace. Any other arguments plaintiff might have raised are deemed waived. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

### A.

The plaintiff's first argument, about her alleged need for a cane, is a non-starter. The plaintiff focuses on a single medical report from October 29, 2019. On a visit to her treating physician, the plaintiff reported that, following an intra-articular injection on September 17, 2019 (R. 1553-54), she had relief for a month, then experienced a steady increase of pain until it was worse than before the injection. She said the pain limited her ability to ambulate. Dr. Plowgian noted an antalgic gait, mild tenderness to palpation, and significantly limited range of motion (R. 1560). When the doctor explained that no further injection was possible until December, plaintiff said she could not tolerate the pain that long. Dr. Plowgian gave her a referral for a joint replacement consultation and "provided [her] a cane to help with balance, and for comfort." (R. 1561). As the ALJ noted, on November 29, 2019, at plaintiff's next physical examination after her October 29th visit with Dr. Plowgian, plaintiff's gait was normal, her muscle strength 5/5 throughout, and her reflexes and sensation normal (R. 1842). She was, according to the record, done with the cane.

10

So, the record discloses that the plaintiff was given a cane on one occasion, for about a month, for balance and comfort. There are no mentions of a cane prior to that time or after that time. Plaintiff's brief certainly does not point to any. [Dkt. #16, at 7-8]. If there were any other mentions of a cane in the medical record, it was up to plaintiff to point them out, of course. Judges are not expected to be archaeologists, sifting through a 2000-page record in search of evidence to support one side's case, whether it be the plaintiff's or the defendant's. *Spitz v. Proven Winners N. Am.*, LLC, 759 F.3d 724, 731 (7th Cir. 2014); *see also Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018)("As has become 'axiomatic' in our Circuit, '[j]udges are not like pigs, hunting for truffles buried in the record.' "). After all, "[a]n advocate's job is to make it easy for the court to rule in his client's favor ...." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). It "is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5, (1987). It is for the plaintiff and her attorney to support plaintiff's claim and her attorney's arguments by reference to the record.

Nevertheless, after a bit of sifting with the help of the Commissioner's brief, it is clear that, in the main, plaintiff had no musculoskeletal complaints at doctor visits and exams were normal, including her gait:

June 14, 2017: jaw hurts, no other complaints (R. 1183-85).

August 22, 2017: no complaints (R. 1179-81).

September 27, 2017: chills, headache, body ache, no musculoskeletal symptoms (R. 1176-77).

November 28, 2017: no complaints (R. 1171-72).

January 3, 2018: no complaints (R. 1164-66)

March 7, 2018: fatigue and back pain (R. 1162-63)

May 1, 2018: no musculoskeletal symptoms; no complaints other than fatigue (R. 1159-60)

May 16, 2018: no musculoskeletal symptoms; no complaints other than sleep disturbance and anxiety (R. 1156-57)

May 30, 2018: back pain; no other issues (R.1152-54)

June 25, 2018: no complaints (R. 1150-51)

July 20, 2018: no musculoskeletal symptoms; no complaints other than fatigue (R 1147-49)

September 7, 2018: gait somewhat antalgic, mild tenderness over the hip, significantly limited hip flexion, strength 4/5 throughout, sensation and reflexes normal (R. 1335-36)

October 1, 2018: gait somewhat antalgic, tenderness over the hip, significantly limited hip flexion, strength 4/5 throughout, (R. 1334)

October 23, 2018: multiple joint pain, but gait normal, reflexes normal, sensation normal, strength 5/5 throughout (R. 1331-32)

November 9, 2018: no musculoskeletal issues, normal exam(R. 1468-70)

December 22, 2018: steady gait and erect posture (R. 1346)

April 18, 2019: no musculoskeletal issues, normal exam (R. 1471-73)

July 29, 2019: no musculoskeletal issues, normal exam (R. 1474-76)

December 3, 2019: no musculoskeletal issues, normal exam (R 1479-82)

January 6, 2020: no musculoskeletal issues, normal exam (R. 1486-88)

January 30, 2020: no musculoskeletal issues, normal exam (R.14 91-94)

November 29, 2019: complaints of fatigue, back and joint pain, gait normal, reflexes and sensation normal, muscle strength 5/5 throughout (R. 1841)

August 18, 2020: arthritis/joint pain, gait normal, reflexes and sensation normal, strength 5/5 throughout (R. 1964)

The record certainly does not support the claim that the plaintiff had much difficulty with walking. Quite the contrary. To make that long story short, plaintiff's argument about needing a cane is not only unsupported by her brief, it is contrary to the medical record.

It's worth pointing out in this regard that plaintiff was represented by counsel at both the administrative level and here in federal court, meaning that one has to presume what she submitted constituted her best case for receiving benefits. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). At her hearing, the plaintiff testified that she could walk for twenty minutes and would have to ice her hip and then apply heat (R. 527-28). She made not mention of needing a cane to walk, and her attorney did not ask her about it. Nor did her attorney mention the need for a cane when questioning the vocational expert. (R. 540-42). Given the medical record, and the administrative hearing, the ALJ certainly cannot be faulted for failing to make the need for a cane part of her residual functional capacity finding. Plaintiff's attorneys often complain about ALJ's cherry-picking evidence from a record; here, it is the plaintiff doing the cherry-picking.

**B.**

Plaintiff's other argument is a little better, but also short on supporting evidence. It concerns the ALJ's treatment of her mental limitations and her incorporation of those in her residual functional capacity finding and in her hypothetical to the vocational expert. As the plaintiff notes, the ALJ the found plaintiff had moderate limitations in understanding, remembering, or applying

13

information; interacting with others; and concentrating, persisting, or maintaining pace. Plaintiff suggests that the ALJ based this exclusively on plaintiff's adult function report [Dkt. #16, at 9], but that's not the case. While the ALJ mentioned that report in her Step Three discussion, she went on to mention all the evidence in the record regarding plaintiff's mental impairments. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021)(reviewing court may consider an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision); *Jeske v. Saul*, 955 F.3d 583, 589 (7th Cir. 2020)("The ALJ's initial discussion was certainly brief . . . [b]ut the discussion picked up in the next part of the ALJ's decision."). Again, however, there isn't much evidence. And, again, the plaintiff cites to very little to support her claim of disability [Dkt. #16, at 6, 7, 9, 10]; just a few pages from the 1700-page medical record. (R. 13-486, 767-1991).

The medical evidence concerning plaintiff's mental functioning is ignored by the plaintiff. But pretending that dispositive authority against a party's position does not exist is pointless. *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 636 (7th Cir. 2020). The evidence is worth a look:

January 26, 2017: psychiatric review negative (R. 1017, 1192)

June 14, 2017: psychiatric negative (R. 1009, 1184), depression screening negative (R. 1010, 1185).

August 22, 2017: psychiatric negative (R. 1181)

March 7, 2018: psychiatric negative (R. 988, 1163)

May 30, 2018: psychiatric negative (R. 977, 979, 1154)

July 7, 2018: anxiety (R. 1148)

July 20, 2018: complained of anxiety (R. 973)

September 4, 2018: sleep disturbance; mental status normal  (R. 1045)

14

May 1, 2019: mental status normal (R. 1853)

July 5, 2019: mental status normal (R. 1850)

August 20, 2019: mental status normal (R. 1848)

October 2, 2019: mental status normal (R. 1905)

October 24, 2019: mental status normal (R. 1918)

November 29, 2019: psychiatric negative, mental status normal (R 1841)

August 18, 2020: mental status normal, reports depression but depression screening negative (R. 1964-65).

Clearly, in the main, the medical record does not suggest that plaintiff is somehow disabled due to a psychological impairment. It is one normal examination after another for over three years.

But, the plaintiff ignores the bulk of the medical evidence. Against all those examination notes, plaintiff directs the court to just two pieces of evidence in support of her claim that her mental impairment precludes her from working. The first is a letter dated October 6, 2018, from therapist Eleanor Gross, who states that she has been seeing plaintiff for about five months. (R. 1317). Ms. Gross's diagnosis was panic disorder, and she indicated that plaintiff reported 3 or 4 panic attacks a day. Plaintiff described her attacks as including racing heart, sweating, thoughts racing. Plaintiff also reported that the attacks caused her to pull over when driving and avoid public places like the grocery store and she said she had trouble staying focused. (R. 1317). Ms. Gross said that plaintiff's symptoms were not stabilized, her ability to function was impaired, and her symptoms were debilitating. (R. 1317).

The ALJ rejected Ms. Gross's opinion because it was out of step with the medical record. (R. 499). As the foregoing summary of unremarkable psychiatric findings shows, there is no

15

indication whatsoever that plaintiff was suffering from any debilitating symptoms. As such, the ALJ was entitled to give Ms. Gross's opinion little or no weight. *Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022); *Zoch*, 981 F.3d at 602; *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008); 20 C.F.R. § 404.1527(c)(2). Moreover, the opinion is not supported by *any* treatment records. A treating source's "opinion 'regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings . . . .'" *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016); *see also Prill*, 23 F.4th at 750 (ALJ correctly discredited opinion that was inconsistent with treatment notes); *Pavlicek*, 994 F.3d at 781 ("An ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes."). With no treatment records, and the fact that the letter merely echos the plaintiff's subjective complaints, the therapist's opinion was of little value. See *Prill*, 23 F.4th at 751; *Zoch*, 981 F.3d at 602; *Ketelboeter*, 550 F.3d at 625.

Then there is a consultative psychological examination from December 22, 2018. The psychologist who conducted the exam, Timothy Sterzik, said he reviewed the record and made note of the foregoing letter from plaintiff's therapist, Ellie Gross, who wrote that plaintiff had "debilitating" panic disorder symptoms. (R. 1346). But, again, that opinion was unsupported and inconsistent with the medical record. Nevertheless, upon examination, Dr. Sterzik noted plaintiff's mood was depressed, her affect was congruent, and her thought process was normal/fair. (R. 1348). Immediate memory was slightly impaired; past memory was normal. Plaintiff had trouble doing serial sevens but could perform simple arithmetic. (R. 1349). Dr. Sterzik felt that plaintiff's cognitive abilities were grossly intact but that she had "some notable difficulties with sustained mental effort and concentration and abstract reasoning." (R. 1350). The ALJ found that Dr. Sterzik's opinion was

"somewhat persuasive", calling it "generally consistent with the medical record as a whole." (R. 499). The ALJ then explained that she accounted for Dr. Sterzik's opinion "with limitations for simple, routine and repetitive tasks, simple work-related decisions, with few changes in the work setting, where any necessary changes need to occur infrequently, and be adequately and easily explained, with only occasional interaction with supervisors, coworkers, and the general public." (R. 499).

The plaintiff contends the ALJ didn't adequately account for Dr. Strezik's findings. She argues that she demonstrated concentration difficulties that "suggest[] an individual who would struggle with the concentration required to perform any work." [Dkt. #16, at 11]. But, without more from plaintiff, it's not clear why that would be. Plaintiff was unable to perform serial sevens and had trouble with abstract reasoning. Some difficulties with sustained mental effort, concentration, and abstract reasoning don't necessarily rule out all work. For example, there is no indication that such weaknesses would preclude plaintiff working as a janitor or a packager. Indeed, abilities like Idea Generation, Mathematics, Solution Appraisal, Judgment and Decision-making, and Idea Evaluation, Critical Thinking and Visioning are all rated of little to no importance to work as a janitor. https://occupationalinfo.org/onet/67005.html. Similar types of aptitudes are ranked as similarly unimportant to the position of packager. https://occupationalinfo.org/onet/98902a.html. In short, "[i]t is unclear what kinds of work restrictions might address [plaintiff's] limitations in concentration, persistence, or pace because [s]he hypothesizes none." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *see also, e.g., Taylor v. Kijakazi*, No. 21-1458, 2021 WL 6101618, at *2 (7th Cir. Dec. 22, 2021)("We have identified no material evidence overlooked or otherwise disregarded. And we see nothing compelling a finding that [plaintiff] requires greater functional

limitations than those determined by the ALJ."); *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *3 (7th Cir. Dec. 21, 2021)("'[Plaintiff] fails not only to explain how she is more limited than the ALJ found, but also to identify what specific additional restrictions the evidence establishes.").

## C.

Because the ALJ found plaintiff has a moderate limitation in maintaining concentration, persistence, and pace, plaintiff raises the familiar arguments on accommodating such a limitation. So common are these cases that courts have taken to referring to them as CPP cases. And, they are likely so common because the guidance on how to assess an ALJ's translation of a moderate limitation in CPP into a hypothetical or residual functional capacity finding has been a little murky, making these case fertile ground for debate again and again. On the one hand, the Seventh Circuit has said that "there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016). But, in other cases, the Seventh Circuit has found that a plaintiff with a moderate restriction on concentration, persistence, and pace can perform simple, repetitive work. *See Jozefyk*, 923 F.3d at 498; *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009) (claimant with deficiencies in concentration, persistence, or pace can perform semiskilled work); *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002) (claimant with moderate limitations in concentration, persistence, or pace can perform "simple and repetitive light work"). And, more specifically, the court has found it acceptable for an ALJ to translate a moderate restriction into a quota or pace limitation where the ALJ draws it from the narrative assessment of a doctor. *See, e.g., Burmester v. Berryhill*, 920 F.3d

507, 511 (7th Cir. 2019); *Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018). That's the line of reasoning the Seventh Circuit employed not long ago in *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021), where the court found "substantial evidence support[ed] the ALJ's conclusion that the restrictions in the hypothetical question adequately addressed [plaintiff's] "moderate" limitations in concentration, persistence, and pace [because t]he question included the same restrictions that [state agency reviewing doctors] stated would accommodate [plaintiff's] limitations." 994 F.3d at 784.

That's what the ALJ did here; she drew her mental residual functional capacity finding from the opinions of the state agency reviewing psychologists. As the ALJ noted, the state agency reviewing psychologists concurred as to the plaintiff's mental limitations. They felt plaintiff's capacity to understand, remember, or apply information was mildly limited; her capacity to interact with others was moderately limited; her capacity to concentrate persist, or maintain pace was moderately limited; and her capacity to adapt or manage onself was moderately limited. (R. 566). They provided a narrative assessment of plaintiff's ability to work:

> Mental capacity to understand, remember and concentrate sufficiently in order to carry out simple one or two-step instructions for a normal work period. The [plaintiff] could make work-related decisions. She could interact with others sufficiently in a work setting with reduced social demands. She does not have problems getting along but states anxiety in large crowds. She would do best in a predictable, routine work setting where employment-related social interactions are infrequent, brief and largely task-specific (vs. collaborative).

(R. 500, 555, 573). With little or nothing in the record to suggest otherwise, the ALJ found the opinions from the state agency reviewing psychologists "persuasive" because was consistent with the medical record as a whole, and she accommodated those limitations in her residual functional capacity finding as follows:

simple, routine and repetitive tasks, simple work-related decisions, with few changes in the work setting, where any necessary changes need to occur infrequently, and be adequately and easily explained, with only occasional interaction with supervisors, coworkers, and the general public.

(R. 496, 500). As can be seen, the ALJ's mental residual functional capacity finding tracks the state agency reviewers' opinions closely:

| | |
|---|---|
| Mental capacity to understand, remember and concentrate sufficiently in order to carry out simple one or two-step instructions for a normal work period. | simple, routine and repetitive tasks |
| The [plaintiff] could make work-related decisions. | simple work-related decisions |
| She would do best in a predictable, routine work setting | few changes in the work setting, where any necessary changes need to occur infrequently, and be adequately and easily explained only |
| She could interact with others sufficiently in a work setting with reduced social demands. She does not have problems getting along but states anxiety in large crowds. She would do best . . . where employment-related social interactions are infrequent, brief and largely task-specific (vs. collaborative). | occasional interaction with supervisors, coworkers, and the general public |

As such, the "logical bridge" is there to allow the reader to see the link from the evidence – which, again, is unremarkable at best – to the ALJ's conclusion. But, the plaintiff argues, unpersuasively, that the bridge is not enough. The plaintiff seems to demand the ALJ reproduce, exactly, the state agency reviewers' opinions in her residual functional capacity finding and for the vocational expert in her hypothetical.

But, that's not required. An ALJ need not use any "magic words" in an RFC assessment; reversal is not required so long as the assessment "incorporate[s] all of the claimant's limitations

20

supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *5 (7th Cir. Aug. 19, 2021). And there is no categorical rule that an ALJ may never accommodate "moderate" limitations in concentration, persistence, and pace with only a restriction to simple tasks. *Weber*, 2021 WL 3671235, at * *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021).

The question is whether the consultants'– and the ALJ's – narrative RFC assessments "adequately encapsulate[d] and translate[d]" the checklist of moderate limitations in concentration. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). As the Seventh Circuit has held, a "moderate limitation" is defined by regulation to mean that functioning in that area is "fair," 20 C.F.R. Pt. 404, Subpt. P, App. 1, and "fair" in ordinary usage does not mean "bad" or "inadequate." *Pavlicek*, 994 F.3d at 783. "So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." " *Pavlicek*, 994 F.3d at 783[3]; *Compare DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (". . . even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms . . . ."). Here, the reviewers noted moderate limitations in concentration, as did the ALJ. The reviewers felt that plaintiff could nevertheless do one- or two-step tasks; the ALJ said that plaintiff could still do simple, routine, and repetitive tasks.

---

[3] Previously, the Seventh Circuit seemingly expressed a somewhat different view on this issue. *See, e.g., O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698–99 (7th Cir. 2016)("Agency regulations, as far as we can tell, do not quantify what is meant by a "moderate" restriction, but the regulations do instruct ALJs to rate the degree of limitation on a 5-point scale of none, mild, moderate, marked, and extreme. See 20 C.F.R. § 404.1520a. If a moderate impairment on maintaining concentration, persistence, and pace equates to being off task at least 15% of the time then, according to the vocational expert, [plaintiff] is essentially unemployable.").

In either case, as *Pavlicek* explained, the plaintiff's moderate limitation was translated as consistent with the ability to perform simple, repetitive tasks at a consistent pace.

Significantly, the expert opinion from the reviewers says, specifically, that plaintiff can perform such work over the course of a "normal work period." In the past, when the Seventh Circuit has remanded cases in this category, the concern seems to have been whether an individual can sustain whatever level of concentration a given job requires over the course of a workday. *See, e.g., Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)("More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift."). Again, the cases on this topic are diverse and difficult to distill into a guide for accommodating CPP limitations or reviewing cases dealing with them. But here, the two experts who reviewed the entire medical record found that plaintiff could sustain concentration and attention sufficiently to perform simple work through the course of a workday. And, though they found moderate limitations in CPP, that means plaintiff's ability to concentrate is rated as "fair." That's not disabling, at least not in the context of the jobs the ALJ found plaintiff could perform.

## CONCLUSION

For the foregoing reasons, the defendant's motion for affirmance [Dkt. #17] is granted and the ALJ's decision is affirmed.

**ENTERED:** _____

**UNITED STATES MAGISTRATE JUDGE**

**DATE:** 8/26/22